# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOUTHERN CALIFORNIA ALLIANCE OF PUBLICLY OWNED TREATMENT WORKS, et al., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, et al., <br><br> Defendants. | No. 2:16-cv-02960-MCE-DB <br><br> **MEMORANDUM AND ORDER** |

By way of the instant action, Plaintiffs Southern California Alliance of Publicly Owned Treatment Works ("SCAP"), the Central Valley Clean Water Association, the National Association of Clean Water Agencies, and the Bay Area Clean Water Agencies (collectively "Plaintiffs") seek declaratory and injunctive relief against Defendants United States Environmental Protection Agency ("EPA"), as well as the EPA's Acting Regional Administrator for Region IX, Defendant Alexis Strauss. See First Amended Complaint ("FAC"), ECF No. 18.[1] According to Plaintiffs, Defendants are impermissibly allowing and/or requiring the use of unpromulgated statistical or other procedures for testing toxicity, including what is known as the Test of Significant Toxicity ("TST"), when issuing

---

[1] For reasons that will become clear below, the above-captioned action will be referred to as "SCAP II."

1

permits related to the treatment and release of wastewater.  Presently before the Court is Defendants' Motion to Dismiss (ECF No. 20), which, for the following reasons is GRANTED with leave to amend.[2]

## BACKGROUND[3]

Plaintiffs are organizations whose members treat and recycle wastewater. Pursuant to the Clean Water Act, 33 U.S.C. § 1251 et seq. ("CWA"), Plaintiffs' members must obtain National Pollutant Discharge Elimination System ("NPDES") permits in order to release treated water into the environment.  These permits are issued by the California Regional Water Quality Control Boards, the State Water Resources Control Board ("State Water Board"), and sometimes the EPA.  It is the EPA, however, that promulgates formal test methods for determining whether discharged water is deemed "toxic."

The NPDES permits contain monitoring requirements that must be conducted according to test procedures approved under 40 C.F.R. pt. 136.  As is relevant here, the test procedures employed include whole effluent toxicity ("WET") test methods, which measure the biological effects (survival, growth and/or reproduction) on aquatic organisms exposed to environmental samples.  In WET testing, the final result is not based on a single measurement, but is the product of a series of replicated measurements on a range of at least five effluent concentrations compared to a control sample.  Those replicated measurements can be assessed through a number of distinct statistical procedures, the outcome of which are referred to as "endpoints."  The endpoints are expressed as percent of the effluent, rather than as "Pass/Fail" or "unitless."

---

[2] Having determined that oral argument would not be of material assistance, the Court ordered this matter submitted on the briefs in accordance with Local Rule 230(g).

[3] Unless otherwise indicated the following facts are taken, at times verbatim, from Plaintiffs' FAC.

2

In 2002, the EPA promulgated a number of WET test methods for use in monitoring compliance with NPDES permit limitations ("2002 Rule"). The 2002 Rule does not expressly mention or authorize the TST statistical procedure. Nor does it mention or authorize, among other things, either an alternative hypothesis presuming the water tested is toxic, unitless expressions of toxicity, or reliance on information from two tested concentrations as opposed to six (of both effluent and control).

Subsequently, in 2010, the EPA published a guidance document regarding the TST ("2010 TST Guidance") — which provided guidance regarding the use of a new potential statistical method of analyzing WET test data for the NPDES program. The TST relies on an alternative hypothesis presuming toxicity and includes Pass/Fail endpoints. The 2010 TST Guidance was not promulgated through formal notice-and-comment rulemaking, expressly confirms that it is not "a permit or a regulation itself" and makes clear that:

> The document does not and cannot impose any legally binding requirements on EPA, states, NPDES permittees, or laboratories conducting or using WET testing for permittees (or for states in evaluating ambient water quality). EPA could revise this document without public notice to reflect changes in EPA policy and guidance.

The EPA later amended the 2002 Rule's WET test methods and procedures in 2012, but still did not expressly incorporate or authorize the use of the TST. The agency also proposed modifications to 40 C.F.R. pt. 136 in 2015, but still did not include reference to the TST.

According to Plaintiffs, the EPA nonetheless began to require use of the TST in various permits in the meantime. For example, in July 2012, the EPA, along with the Regional Water Quality Control Board Santa Ana Region, issued NPDES Permit No. CA0110604 to the Orange County Sanitation District. This permit required the use of the TST and stated, "The reported results shall include: determination of 'Pass' or 'Fail' and 'Percent Effect' following the Test of Significant Toxicity hypothesis testing approach in [the 2010 TST Guidance]."

Notably, while the EPA had been urging the State of California to utilize the TST for years, regulated dischargers objected based on concerns regarding high false positive error rates and because the TST approach had not been formally promulgated and publicly vetted.  In light of those objections, the State Water Board requested pursuant to 40 C.F.R. pts. 136.4 and 136.5, approval of an Alternate Test Procedure ("ATP") that would permit use of the TST statistical method in conjunction with a test design incorporating only two samples in lieu of the five-concentration WET test procedure.  On March 17, 2014, the EPA approved the two-concentration TST design as a limited use ATP for NPDES permits issued in California.

On June 25, 2014, Plaintiffs filed suit against Defendants EPA and Jared Blumenfeld, then Regional Administrator of EPA Region IX, alleging that those defendants had illegally and improperly approved the State Water Board's request to use a newly formulated methodology as an ATP.  See So. Cal. Alliance of Publicly Owned Treatment Works v. EPA, Case No. 2:14-cv-01513-MCE-DB ("SCAP I").  Plaintiffs filed that action seeking to overturn the ATP approval and to obtain a permanent injunction preventing the EPA from mandating use of the two-concentration TST.  Id., First Am. Compl., ECF No. 15, Prayer for Relief ¶ E.

On February 11, 2015, however, just before Defendants' Reply to its Cross-Motion for Summary Judgment was due, the EPA withdrew its ATP approval of the two-concentration TST testing method "effective immediately."  Because of that withdrawal, the Court determined the case to be moot on May 15, 2015, granted Defendants' Motion for Summary Judgment, denied Plaintiffs' own motion and entered judgment in favor of Defendants.[4]  Id., Memorandum and Order, ECF No. 51.

---

[4] Plaintiffs later moved for reconsideration of the Court's decision and in their Reply brief raised for the first time a claim based on the 2010 TST Guidance. Id., Pls. Reply, ECF No. 57.  The Court thereafter permitted supplemental briefing and ultimately concluded, among other things, that Plaintiffs had not alleged a claim based on the guidance documents. Id., Memorandum and Order, ECF No. 94.  Plaintiffs then moved to reopen the judgment due to mistake, inadvertence, and excusable neglect. Id., Pls. Mot. Reopen, ECF No. 96.  The Court denied that Motion as untimely and because Plaintiffs' tactical choice to focus on the ATP did not warrant post-judgment relief. Id., Memorandum and Order, ECF No. 102.

Plaintiffs contend, however, that despite having withdrawn the ATP, the EPA continued to use, require the use, or approve the use of the TST as a statistical procedure. On March 6, 2015, for example, the EPA issued a NPDES Permit and accompanying Fact Sheet for the Guam Waterworks Authority requiring use of the TST statistical approach. The Fact Sheet stated that "[t]he permit includes new WET requirements based on EPA's [2010 TST Guidance]" as a permit requirement. Additionally, in June of that same year, the EPA issued NPDES Permit No. 0084280 for Table Mountain Rancheria Wastewater Treatment Plant, which required use of the TST and indicated that "[t]his discharge is subject to a determination of 'Pass' or 'Fail' from a single-effluent concentration chronic toxicity test." Finally, according to Plaintiffs, on February 2, 2017, the EPA issued NPDES Permit No. CA0109991 for Hyperion Treatment Plant. That permit likewise required the use of the TST and indicated that "[t]his discharge is subject to a determination of 'Pass' or 'Fail' from a single-effluent concentration chronic toxicity test."

In keeping with the foregoing, EPA has also purportedly informed state-permitting authorities that the use of the TST as set forth in the 2010 TST Guidance is a "requirement" in at least some permits that involve WET testing. On March 18, 2015, EPA issued an NPDES Permit Quality Review, State of Hawaii, providing that "[t]he State has made significant improvements in permit quality over the last few years as permit practices have changed from . . . requiring only monitoring requirements in some case for chronic toxicity, to including chronic toxicity limits based on the . . . TST." The Quality Review also refers to use of the TST as a requirement.

That same day, the Regional Water Quality Control Board, San Diego Region, revised the Water Discharge Requirements for Continental Maritime of San Diego in Order R9-2015-0009 to require use of the TST and "Pass" or "Fail" discharge determinations based, at least in part, on the 2010 TST Guidance. This Regional Water Quality Control Board purportedly adopted those requirements because it believed use of the TST was required by the EPA.

Just over a month later, on April 9, 2015, the Regional Water Quality Control Board, Los Angeles Region, revised the NPDES permit for the Joint Outfall System, Order R4-2015-0070, for the San Jose Creek Water Reclamation Plant, to continue requiring the TST and "Pass" or "Fail" discharge requirements based on the 2010 TST Guidance. This Regional Board, like the last, also purportedly believed that use of the TST was required.

Subsequently, on May 7, 2015, the EPA's Becky Mitschele informed Cassandra Owens of the State Water Board in an email that "[all] NPDES effluent compliance monitoring for chronic toxicity shall be reported using the 100% effluent concentration and negative control, expressed in unites of USEPA's TST statistical approach (pass or fail, % effect). The TST hypothesis (Ho) is statistically analyzed using only the permit-specified in-stream waste concentration and a negative control."

The following week, on May 13, 2015, State Regional Water Quality Control Board, San Diego Region, issued an NPDES permit, Order No. R9-2015-0002, for the Padre Dam Municipal Water District, which required use of the TST method based on the 2010 TST Guidance. Again, this regional district is believed to have thought the EPA required use of the TST.

According to Plaintiffs, the EPA has repeatedly taken the position that despite withdrawal of the ATP, the state may still require use of the TST and the state has continued to include such requirements in its permits believing they are mandated. After the termination of SCAP I, Plaintiffs thus initiated this action, now proceeding on the FAC, through which they seek to enjoin approval and/or use of the TST or non-promulgated procedures and methods for NPDES toxicity compliance determinations. Presently before the Court is Defendants' Motion to Dismiss the FAC in its entirety on the basis that: (1) to the extent Plaintiffs' claims are a re-packaged version of an attack on the 2010 TST Guidance they are time-barred; (2) Plaintiffs' attacks on the various NPDES permits do not belong in this Court; and (3) regardless, Plaintiffs have failed to identify any final agency actions over which this Court would have jurisdiction under the

Administrative Procedures Act ("APA"), 5 U.S.C. § 702, 704, 706.  Defendants' arguments are well taken.[5]

## STANDARD[6]

### A. Motion To Dismiss For Failure To State A Claim Pursuant To Federal Rule Of Civil Procedure 12(b)(6)[7]

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party.  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337–38 (9th Cir. 1996).  Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations.  However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id. (internal citations and quotations omitted).  A court is not required to accept as true a "legal conclusion couched as a factual allegation."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555).  "Factual allegations must be enough to raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller,

---

[5] The Court has considered the Objections and Request to Strike (ECF No. 29) filed by Plaintiffs. The objections expressly considered herein are OVERRULED for the reasons stated below.  All remaining objections are OVERRULED as moot because the Court did not rely on the disputed evidence or arguments in reaching its decision.

[6] The Court realizes Plaintiffs take issue with Defendants' statement of the applicable standard. The Court understands which arguments are jurisdictional and which are not and addresses them appropriately.

[7] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading must contain something more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.")).

Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket assertion, of entitlement to relief." Twombly, 550 U.S. at 556 n.3 (internal citations and quotations omitted). Thus, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." Id. (citing 5 Charles Alan Wright & Arthur R. Miller, supra, at § 1202). A pleading must contain "only enough facts to state a claim to relief that is plausible on its face." Id. at 570. If the "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. However, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

### B. Motion To Dismiss For Lack Of Subject Matter Jurisdiction Pursuant To Rule 12(b)(1)

Federal courts are courts of limited jurisdiction, and are presumptively without jurisdiction over civil actions. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). The burden of establishing the contrary rests upon the party asserting jurisdiction. Id. Because subject matter jurisdiction involves a court's power to hear a case, it can never be forfeited or waived. United States v. Cotton, 535 U.S. 625, 630 (2002). Accordingly, lack of subject matter jurisdiction may be raised by either party at any point during the litigation, through a motion to dismiss pursuant to Rule 12(b)(1). Arbaugh v. Y&H Corp., 546 U.S. 500, 506 (2006); see also Int'l Union of Operating Eng'rs v. Cnty. of Plumas, 559 F.3d 1041, 1043-44 (9th Cir. 2009). Lack of subject matter jurisdiction may also be raised by the district court sua sponte. Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 583 (1999). Indeed, "courts have an independent

obligation to determine whether subject matter jurisdiction exists, even in the absence of a challenge from any party." Id.; see Fed. R. Civ. P. 12(h)(3) (requiring the court to dismiss the action if subject matter jurisdiction is lacking).

There are two types of motions to dismiss for lack of subject matter jurisdiction: a facial attack and a factual attack. Thornhill Publ'g Co. v. Gen. Tel. & Elec. Corp., 594 F.2d 730, 733 (9th Cir. 1979). Thus, a party may either make an attack on the allegations of jurisdiction contained in the nonmoving party's complaint, or may challenge the existence of subject matter jurisdiction in fact, despite the formal sufficiency of the pleadings. Id.

When a party makes a facial attack on a complaint, the attack is unaccompanied by supporting evidence, and it challenges jurisdiction based solely on the pleadings. Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). If the motion to dismiss constitutes a facial attack, the Court must consider the factual allegations of the complaint to be true, and determine whether they establish subject matter jurisdiction. Savage v. Glendale High Union Sch. Dist. No. 205, 343 F.3d 1036, 1039 n.1 (9th Cir. 2003). In the case of a facial attack, the motion to dismiss is granted only if the nonmoving party fails to allege an element necessary for subject matter jurisdiction. Id.

However, in the case of a factual attack, district courts "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." Safe Air for Everyone, 373 F.3d at 1039. In such a case, "no presumptive truthfulness attaches to plaintiff's allegations." Thornhill, 594 F.2d at 733 (internal citation omitted). The party opposing the motion has the burden of proving that subject matter jurisdiction does exist, and must present any necessary evidence to satisfy this burden. St. Clair v. City of Chico, 880 F.2d 199, 201 (9th Cir. 1989). If the plaintiff's allegations of jurisdictional facts are challenged by the adversary in the appropriate manner, the plaintiff cannot rest on the mere assertion that factual issues may exist. Trentacosta v. Frontier Pac. Aircraft Ind., Inc., 813 F.2d 1553, 1558 (9th Cir. 1987) (quoting Exch. Nat'l Bank of Chi. v. Touche Ross & Co., 544 F.2d 1126, 1131

(2d Cir. 1976)). Furthermore, the district court may review any evidence necessary, including affidavits and testimony, in order to determine whether subject matter jurisdiction exists. McCarthy v. United States, 850 F.2d 558, 560 (9th Cir. 1988); Thornhill, 594 F.2d at 733. If the nonmoving party fails to meet its burden and the court determines that it lacks subject matter jurisdiction, the court must dismiss the action. Fed. R. Civ. P. 12(h)(3).

### C. Leave to Amend

A court granting a motion to dismiss a complaint must then decide whether to grant leave to amend. Leave to amend should be "freely given" where there is no "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment . . . ." Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to be considered when deciding whether to grant leave to amend). Not all of these factors merit equal weight. Rather, "the consideration of prejudice to the opposing party . . . carries the greatest weight." Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 185 (9th Cir. 1987)). Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment." Intri-Plex Techs. v. Crest Group, Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006, 1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989) ("Leave need not be granted where the amendment of the complaint . . . constitutes an exercise in futility . . . .")).

## ANALYSIS

### A. To The Extent Plaintiffs Are Attempting To Directly Challenge The 2010 TST Guidance, Their Claims Are Time-Barred.

Plaintiffs contend this Court has jurisdiction over their claims under the APA,

which provides for review in the district courts of "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. Claims under the APA must be filed within six years of such a final agency action. 28 U.S.C. § 2401(a). It is clear from the FAC and Plaintiffs' opposition that despite their assertions to the contrary they fundamentally take procedural issue with the EPA's failure to formally promulgate the 2010 TST Guidance pursuant to notice-and-comment requirements. The six-year statute of limitations applicable to that claim, which is itself already lengthy, ran in June 2016, and the instant action was not filed until December of that year. Accordingly, to the extent Plaintiffs challenge the 2010 TST Guidance itself, their claims must fail.

In an attempt to save the FAC, Plaintiffs nonetheless argue that the statute did not begin to run until July 2012 when the EPA purportedly began treating the 2010 TST Guidance as a rule. First, that argument is contrary to the case law. See Cedars-Sinai Medical Center v. Shalala, 177 F.3d 1126, 1129 (9th Cir. 1999) ("Under well-settled circuit authority, a cause of action challenging procedural errors in the promulgation of regulations accrues on the issuance of the rule."); Shiny Rock Mining Corp. v. United States, 906 F.2d 1362, 1364-66 (9th Cir. 1990). To the extent actual or constructive knowledge is a necessary condition precedent to the commencement of the statutory period, Plaintiffs do not allege in the FAC that they were unaware of the 2010 TST Guidance when it was issued or that they somehow lacked the requisite notice. See Shiny Rock, 906 F.2d at 1364-65.

Second, Plaintiffs' argument that the 2010 TST Guidance is being applied in some new and unforeseen way is also not supported by the allegations in the FAC. Plaintiffs have taken the position here that no alternative statistical approaches may be employed unless formally promulgated. But that is exactly why the 2010 TST Guidance was issued (i.e., to provide a basis for implementing the TST approach in NPDES permits). If only promulgated approaches were permitted then there would be no justification for issuing the 2010 TST Guidance in the first place and no reason not to immediately challenge its endorsement of an unpromulgated procedure. Accordingly,

based on the allegations in the FAC, Plaintiffs were on notice at the time the 2010 TST Guidance was issued such that they could have raised the instant claims at that time, and there is no reason alleged as to why they needed to wait until the Guidance was actually applied.

Finally, Plaintiffs have not shown that the statute of limitations applicable to their instant claims should be equitably tolled. In order to meet their burden, Plaintiffs must establish: "(1) that [they were] pursuing [their] rights diligently, and (2) that some extraordinary circumstance stood in [their] way." Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005). According to Plaintiffs, "the statute of limitations on these claims was equitably tolled due to the related litigation concerning the ATP in Case No. 2:14-cv-01513-MCE-DB." FAC at 19 n.1. "Plaintiffs believed that the Complaint in the related action was broad enough to cover a challenge to the TST Guidance." Id.

This Court already voiced its disagreement when it addressed Plaintiffs' arguments in SCAP I and denied Plaintiffs' motion for reconsideration of the decision granting judgment in Defendants' favor:

> Plaintiffs have now dramatically switched tactics and argue that their case is not moot because "[a]t its core, Plaintiffs . . . fundamentally challenge the ability of the EPA to utilize guidance documents in the same way as a promulgated rule . . . to regulate Plaintiffs' members' activities." Pls.' Further Brief, ECF No. 67, at 7. More specifically, Plaintiffs contend that the 2010 TST guidance documents are now being impermissibly used as a regulation. Id. at 8-9. Plaintiffs thus seek "a judicial determination . . . stating that the 2010 TST guidance documents cannot be used as a rule unless and until subjected to notice and comment rulemaking procedures provided by the APA." Id. at 9. The problem with this argument is that Plaintiffs did not plead such a claim in their First Amended Complaint.
>
> Plaintiffs of course attempt to argue to the contrary, reasoning that "[b]ecause of a grave concern that [permits might still issue even if the ATP approval was withdrawn], Plaintiffs raised in their Complaint the issue of the 2010 TST guidance documents being used as a regulation before being properly incorporated into the applicable regulations." Id. (citing FAC, ¶¶ 3, 22, 30, 31, 32 and 34). Plaintiffs would thus have the Court conclude that "even outside of the issue of the approval of the ATP, Plaintiffs adequately pled the issue of the use of the TST guidance to set effluent limitations

and monitoring requirements in . . . NPDES . . . permits." Id. Not so.

Throughout this entire case, through both complaints, through briefing on Plaintiffs' request for preliminary injunctive relief, through briefing on the parties' cross-motions for summary judgment, and even most of the way through the original briefing on Plaintiffs' Motion for Reconsideration, the only issue Plaintiffs raised was the EPA's approval of the ATP. It was not until Plaintiffs filed their Reply to their Motion for Reconsideration that they switched gears. Before then, Plaintiffs never argued that Defendants were impermissibly relying on guidance documents to justify decisions.

Indeed, Plaintiffs gave the 2010 TST guidance documents barely a mention in the FAC. For example, while Plaintiffs do cite the documents in the "Legal Background" section of their pleading, it is clearly by way of background only, to show that because Defendants could not rely on the guidance as a regulation, they concocted the challenged ATP strategy instead. Moreover, the guidance documents were not referenced at all in the "Factual Background" pertaining to the instant action, and all of the claims for relief focused only on ATP approval. There is simply no plausible reading of the FAC that supports the conclusion that Plaintiffs were challenging anything other than the EPA's actions in approving the ATP.

The parties' course of conduct also makes clear that neither side believed Plaintiffs were challenging Defendants' reliance on guidance documents as opposed to the ATP approval. Throughout extensive briefing on multiple issues, the guidance documents were never raised as a basis for Plaintiffs' requested relief. Nor did Plaintiffs include any claim based on the guidance documents in the parties' joint status report. See ECF No. 18.

This makes sense because throughout this case, the permits were being issued pursuant to the ATP. There was no reason to challenge the EPA's reliance on the guidance documents because those documents were not being used to justify issuing permits. Indeed, even if Plaintiffs had wanted to raise such a challenge in their FAC, any such claim would have been speculative and unripe at the time.

Because Plaintiffs failed to adequately allege a claim challenging Defendants' reliance on the 2010 TST guidance documents, they cannot pursue that claim now. It was simply too late to pursue a new claim once summary judgment had been granted and the parties had reached the tail end of briefing on Plaintiffs' Motion for Reconsideration. See, e.g., Navajo Nation v. U.S. Forest Service, 535 F.3d 1058, 1080 (9th Cir 2008) ("[O[ur precedents make clear that where, as here, the complaint does not include the necessary factual allegations to state a claim, raising such claim in a summary

| | |
|---|---|
| 1 | judgment motion is insufficient to present the claim to the district court.") |
| 2 | |

SCAP I, Order, ECF No. 94 at 9-11.

Plaintiffs thereafter moved to reopen the judgment, and the Court reiterated that:

> It is unclear . . . exactly how excusable neglect could warrant reconsidering that order. Plaintiffs argue that their "failure to plead allegations concerning the use of the 2010 Guidance to the Court's satisfaction was an inadvertent mistake based upon Plaintiffs' reliance on the Court's September 2015 order." Pls.' Mot. to Reopen J. at 9:6–7. The Court had granted summary judgment based on Plaintiffs' challenge to the ATP becoming moot, and Plaintiffs moved for reconsideration. The September 2015 order allowing additional briefing on that motion clearly stated that the issue before the Court had only ever been the validity of the ATP, not a general "risk of obtaining permits under the TST testing method." Mem. & Order, ECF No. 61, at 9:13–15. It further clarified that "[t]he Court was not under the illusion that withdrawal of the ATP approval would also withdraw the 2010 Guidance document that discussed the TST as an available statistical method." Id. at 9:18–19. The September 2015 order granted Plaintiffs' original motion for reconsideration for the limited purpose of whether their newly discovered evidence made the ATP challenge no longer moot. Id. at 10:10–12. That order made clear that the Court considered the ATP's validity the sole basis of Plaintiffs' claims against the EPA.
>
> Indeed, at no point prior to Plaintiffs' reply brief on their motion to reconsider did they shift toward challenging the 2010 Guidance. Plaintiffs chose to litigate on the narrow issue of the ATP's validity. Changing tactics in a reply brief on a motion to reconsider can in no way be construed as excusable neglect, much less blamed on the Court's September 2015 order. Plaintiffs' tactical choice to narrow their focus to the ATP approval provides no basis for this Court to reopen judgment more than a year after the granting of summary judgment.

Id., Order, ECF No. 102 at 10. In short, whether Plaintiffs had stated a claim with regard to the 2010 TST Guidance in SCAP I was not a close question, and for those same reasons already identified by the Court in that case, Plaintiffs have failed to show they are entitled to equitable tolling of their current challenge to the 2010 TST Guidance here.[8] Plaintiffs' claims are thus DISMISSED as untimely.

---

[8] Nor is the Court convinced that the minute order granting Plaintiffs' request to file a sur-reply with respect to a Motion to Strike and indicating that "no further filings [would] be permitted" led the parties to believe they could not move for leave to amend their complaint or file a new protective action. See

14

**B. To the extent Plaintiffs are instead challenging issuance of various NPDES permits, this Court lacks jurisdiction.**

Challenges to NPDES permits, whether issued by the states or the EPA, are not reviewable in the district courts. EPA-issued permits must initially be challenged before the Environmental Appeals Board and then in the appropriate court of appeals. 33 U.S.C. § 1369(b)(1)(F); 40 C.F.R. §§ 124.19(a)(1), 124.19(a)(3), 124.19(l)(1) ("A petition to the Environmental Appeals Board . . . is, under 5 U.S.C. § 704, a prerequisite to seeking judicial review of the final agency action."); SCAP v. EPA, 853 F.3d 1076, 1081, 1083 n.4 (9th Cir. 2017). Moreover, the APA provides jurisdiction only for those claims "for which there is no other adequate remedy in a court." 5 U.S.C. § 704. Since the CWA provides a specific remedy for the challenge of NPDES permits, an APA challenge is not viable. Claims against state-issued permits are also not properly lodged in this Court. Instead, such challenges must be brought in the state courts. 40 C.F.R. § 123.30 (judicial review of permits issued by the state is limited to state court); Cal. Water Code §§ 13320, 13321, 13330 (review and petition for stay by state board, and review in superior court); SCAP v. EPA, 853 F.3d at 1081 ("The [NPDES] permits issued by the state are subject to administrative and judicial review in accordance with state law.").

Plaintiffs agree with Defendants' jurisdictional argument in principle, but take the position that they are not challenging the permits and are instead alleging only "that EPA acted beyond its statutory and regulatory authority in using, requiring the use, and allowing the use of the TST." Opp., ECF No. 24 at 16.[9] The problem with this argument is that it runs contrary to the allegations in the FAC, in which Plaintiffs challenge the use of the TST in specific permits. In sum, Plaintiffs' argument in the FAC is really "that EPA

---

SCAP I, ECF No. 84. The Court was clearly limiting the filings that would be accepted with relation to the already pending motions. It was in no way prohibiting any party from filing additional requests or from initiating new actions.

[9] On its face, this argument is fundamentally, as discussed above, a facial challenge to the 2010 TST Guidance itself.

acted beyond its statutory and regulatory authority in using, requiring the use, and

///

allowing the use of the TST" in the identified permits.  This Court is not the appropriate forum in which to raise these claims.

### C. Regardless, Plaintiffs Have Failed To Identify Any Final Agency Action That Is Reviewable By This Court Under The APA.

As previously indicated, this Court has jurisdiction over timely challenges to "final agency actions" under the APA.  5 U.S.C. § 704.  An action is "final" under the APA if it "mark[s] the 'consummation' of the agency's decision-making process" and is not "merely tentative or interlocutory."  Bennett v. Spear, 520 U.S. 154, 177-78 (1997) (citations omitted), overruled in part on other grounds.  The action must also "be one by which 'rights or obligations have be determined,' or from which 'legal consequences will flow.'"  Id. at 178 (citations omitted).

Plaintiff identifies seven distinct actions it purports are final for this Court's purposes:  (1) "issuance of the TST documents themselves";[10] (2) "NPDES Permit No. CA0110604 for Orange County Sanitation District"; (3) "NPDES Permit Fact Sheet for Guam Waterworks Authority"; (4) "NPDES Permit No. 0084280 for Table Mountain Rancheria Wastewater Treatment Plant"; (5) "NPDES Permit No. CA0109991 for Hyperion Treatment Plant"; (6) "NPDES Permit Quality Review to the State of Hawaii"; and (7) an "email from Becky Mitschele of USEPA to Cassandra Owens of the State Water Board dated May 7, 2015, informing Owens that '[a]ll NPDES effluent compliance monitoring' must be done using the unpromulgated TST."  FAC, ¶¶ 57-58.[11]  The Court is not convinced.[12]

---

[10] The Court does not address whether the 2010 TST Guidance itself constitutes a final agency action given that it has already determined Plaintiffs' challenges to the Guidance are time-barred.

[11] Both the NPDES Permit Quality Review to the State of Hawaii and the Permit Fact Sheet for the Guam Waterworks cited in the FAC are draft documents.  In opposition to the instant Motion, Plaintiffs contend the final versions are materially the same.

[12] The Court pauses to consider Defendants' argument that Plaintiffs have not adequately alleged that a 2010 Toxicity Training Tool is a final agency action.  Plaintiffs do not address this argument in

16

First and foremost, state-issued permits are not EPA actions and thus cannot be considered "final agency actions" subject to review in this Court. 5 U.S.C. § 701(b)(1) ("agency" under the APA is a federal government agency). Nor does it matter if the EPA-issued permits are final actions since review is improper here. And draft documents (i.e., the NPDES Permit Quality Review to the State of Hawaii and the Permit Fact Sheet for the Guam Waterworks) clearly cannot constitute final actions because they are, by definition, not final.[13] Finally, the Mitschele email does not constitute a final agency action because it merely provides comments on a draft of a state-issued permit.[14] See SCAP v. EPA, 853 F.3d at 1081. Absent identification of some final agency action over which this Court has jurisdiction, Plaintiffs' claims again fail.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (ECF No. 20) is GRANTED with leave to amend. Not later than twenty (20) days following the date this Memorandum and Order is electronically filed, Plaintiff may, but is not required to, file an amended complaint. Failure to timely file such an amended pleading will result in dismissal of this action with prejudice upon no further notice to the parties.

IT IS SO ORDERED.

Dated: March 17, 2018

MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE

---

opposition and the Court does not construe the FAC to raise such a claim. As such, it is not necessary to address Defendants' contentions. Regardless, any challenge to the Training Tool would be untimely as well.

[13] Even if Plaintiffs had referred to the final documents rather than draft versions in their FAC, those documents are not "final" since EPA's Permit Quality Review does not bind the State of Hawaii or impose any requirements on the state. The other draft document, the Permit Fact Sheet, is prepared during the course of the permitting process and is not itself a final action.

[14] The Court is aware that Plaintiffs take the position Defendants failed to address this email in the moving papers and thus dismissal would be improper. The Court disagrees and interprets Plaintiffs' Motion as a challenge to each of the alleged final agency actions alleged by Plaintiffs, including all permit-related documents. See Defs. Mot. at 10-12.